UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND STROMINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01654-TWP-MPB |
| | ) |
| INDIANA DEPARTMENT OF CORRECTION, and | ) |
| C. NICHOLSON, | ) |
| | ) |
| Defendants. | ) |

## ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT

### I. BACKGROUND

This matter is before the Court on a Motion for Summary Judgment filed by the Defendants, Indiana Department of Correction ("IDOC") and Lt. C. Nicholson ("Lt. Nicholson") dkt [48]. The Plaintiff, Raymond Strominger ("Mr. Strominger"), is an inmate who is currently confined at the Pendleton Correctional Facility but was formerly incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley"). He is confined to a wheelchair. The incidents giving rise to the claims in the Amended Complaint all occurred at Wabash Valley.

When the Court screened the Amended Complaint, it allowed Claim 1 to proceed. Claim 1 alleges that Mr. Strominger was denied access to outdoor recreation for over ten months, beginning in December 2013, because Lt. Nicholson failed to timely and properly repair a wheelchair ramp. Mr. Strominger alleges that these circumstances violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq*. (the "ADA"), the Rehabilitation Act, 29 U.S.C. § 794 ("Rehab Act"), and the Eighth and Fourteenth Amendments to the United States Constitution. The ADA and Rehab Act claims were allowed to proceed against the IDOC. The

constitutional claims for damages are proceeding against Lt. Nicholson in his individual capacity only. Mr. Strominger seeks compensatory and punitive damages.

For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment is **granted.**

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Strominger as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

At all times relevant, Mr. Strominger was incarcerated at Wabash Valley. He uses a wheelchair, and this lawsuit relates to a wheelchair ramp that led from his housing unit, the secured confinement unit ("SCU"), to the outdoor recreation area. Before December 2013, Mr. Strominger had been using the ramp without issue. Dkt. [85]-1, p. 18, lines 14-17; p. 19, lines 8-10 (Strominger Deposition). Sometime in December 2013, he was on his way to outdoor recreation when he discovered a hole in the ramp. Amended Complaint, dkt. [5], p. 6; dkt. [85]-1, p. 18, lines 18-25; dkt. [68], ¶ 19 (Strominger's Declaration). Mr. Strominger believes that if the wheel of his wheelchair went into the hole he would have been flipped out of his chair, although this never actually occurred. Dkt. [85]-1, pp. 28-29. He does not know if he could have maneuvered around the hole because he stopped using the ramp after discovering the hole. Dkt. [85]-1, p. 24, lines 5-25; p. 25, lines 1-17. Mr. Strominger alleged in the Amended Complaint that he "would not try to use the ramp again as it is too unsafe." Dkt. [5], p. 7, ¶ 6. Further, he does not allege that Lt. Nicholson or anyone else prohibited him from trying to use the damaged ramp. *See* dkt. [5].

In contrast to what he pled in the Amended Complaint and in grievances, Mr. Strominger testified during his deposition that he wanted to use the ramp, but that staff would not allow him

3

to use it. Specifically, Mr. Strominger testified that staff was ordered by Lt. Nicholson that Mr. Strominger was not allowed to use the ramp. Dkt. [85]-1, p. 43, lines 4-25; p. 44, lines 1-16. Mr. Strominger does not remember the names of any officer who prevented him from using the ramp. *Id.,* p. 48.

Lt. Nicholson disputes ever telling Mr. Strominger that he was not allowed to use the ramp. *Id.,* p. 44, lines 5-25; p. 45, line 1. Lt. Nicholson testified that he did not issue an order that Mr. Strominger or any other offender not be allowed to use the ramp. As a Lieutenant, Lt. Nicholson would have been aware if such an order had been issued in the SCU, and he is unaware of there being such an order. Dkt. [48]-1, ¶ 10.

Mr. Strominger was housed in administrative segregation, and offenders in administrative segregation are placed in mechanical restraints when they are escorted around the facility. Lt. Nicholson has always understood that Mr. Strominger would receive staff assistance if he wanted to use the ramp and go to outdoor recreation. *Id.*, ¶¶ 2-3. Lt. Nicholson testified that if he had been aware of staff not allowing Mr. Strominger to use the ramp, he would have taken appropriate steps to make sure Mr. Strominger had access to the recreation area. *Id*., ¶ 11.

Mr. Strominger contacted Lt. Nicholson in December 2013 regarding issues with the ramp. Answer, dkt. [25], ¶ 4; dkt. [68], ¶¶ 19-20. Lt. Nicholson inspected the ramp in January 2014. After inspecting the ramp, Lt. Nicholson determined that the ramp was damaged, but that it could still be used. He also believed that the hole in the ramp could be avoided. Dkt. [48]-1, ¶¶ 5-6. While Lt. Nicholson believed the ramp was in usable condition, he also determined that it should be repaired with wood. *Id.*, ¶ 7. The ramp was exposed to the outside conditions, so it would get wet when it rained. Dkt. [85]-1, p. 26, lines 10-17. Mr. Strominger testified that that was why the ramp became damaged. *Id.*

In an internal email dated January 24, 2014, related to a discussion of repairing the ramp, Lt. Nicholson stated that the "current ramps are a hazard." Dkt. [48]-2. Notwithstanding his statement, Lt. Nicholson still believed that the ramps were safe and appropriate to use with staff assistance. Dkt. [48]-1, ¶ 9.

On April 27, 2014, Mr. Strominger tried to go to outside recreation but when the officer pushing him saw the ramp, he stopped and pulled Mr. Strominger back and said he was not going to chance pushing him into the hole. The officer then pushed Mr. Strominger back to his cell. Dkt. [68], ¶ 21. Mr. Strominger filed an informal grievance about the ramp on April 27, 2014. Dkt. [48]-7, p. 4. This grievance was assigned # 82140. *Id.*, p. 1. He complained that the ramp had a "big hole" in it and he had been "told by Sgt. Busbe over 3 months ago it was fixed, but it is not and only getting worse." *Id.,* p. 4. On April 28, 2014, Lt. Nicholson responded to the informal complaint that "[t]his is scheduled to be totally replaced by a new concrete one. I don't have a completion date yet." Dkt. [48]-7, p. 4.

On April 29, 2014, in his formal grievance, Mr. Strominger stated that "[t]he other day when I used the ramp, 4/27/14, my front wheel on my wheel chair almost went through the hole, which would have flipped me head first out of my wheelchair." *Id.,* p. 3. Mr. Strominger also complained that the ramp "has become so unsafe that I am unable to use it at all in fear that I will get hurt, therefore leaving me unable to have access to the outside rec area . . ." *Id.*

On May 1, 2014, shortly after grievance #82140 was filed, Lt. Nicholson investigated and photographed the ramp in its damaged condition. *See* dkt. [48]-3. This photograph accurately depicts the ramp in its damaged condition. Dkt. [48]-1, ¶ 13; dkt. [85]-1, p. 23, lines 14-24.

On May 12, 2014, Lt. Nicholson reported to the grievance specialist that he had investigated Mr. Strominger's complaint and the handicapped ramp was temporarily repaired with

wood until a concrete ramp is completed. Dkt. [48]-7, p. 8. On June 2, 2014, the facility notified Mr. Strominger that the ramp had been repaired. *Id.*, p. 10.

On May 16, 2014, Lt. Nicholson photographed the repaired ramp. *See* dkt. [48]-4. This photograph accurately depicts the ramp after it had been repaired with wood. Dkt. [48]-1, ¶ 14; dkt. [85]-1, p. 34, lines 3-9. Mr. Strominger did not have issues with the ramp when it was repaired with wood, although he testified that it became rotted sometime later. Dkt. [85]-1, p. 34, lines 10-23; p. 37, lines 6-25.

Mr. Strominger filed a second grievance about the ramp on or about June 18, 2014. The grievance was assigned #83037, and complained that the ramp developed another hole. Dkt. [48]-8. Mr. Strominger also complained that "[t]his ramp is only made out of thin plywood and it is exposed to all the elements. In 2011 when the ramp was first installed it needed to be constructed out of concrete, not plywood . . . This plywood ramp needs to be replaced with a concrete ramp." *Id.*

B. Kirton, the Offender ADA Coordinator at Wabash Valley, investigated the ramp in response to grievance #83037. On June 30, 2014, B. Kirton stated in relevant part that:

> an investigation into allegations of an ADA violation was conducted . . . The current wheelchair ramp has been repaired by Maintenance staff and is safe to be used. A work order has been submitted to the facility's Maintenance Department to replace the current wheelchair ramp with a concrete ramp. The new ramp will be constructed as time and resources allow.

*Id.* In addition, Lt. Nicholson investigated the ramp sometime around June 11, 2014, and determined that the prior repair had still held up, and that the ramp was in usable condition. Dkt. [48]-1, ¶ 15.

Mr. Strominger filed a third grievance around September 22, 2014. The third grievance was assigned #84713. Among other things, Mr. Strominger complained that the ramp had

developed a hole, and that it was not properly repaired before. Mr. Strominger also continued to complain that the ramp was not made of concrete. Dkt. [48]-9, pp. 1, 3.

Lt. Nicholson issued a response to grievance #84713 on October 14, 2014, where he stated, "I have reviewed the complaint of Offender Strominger, Raymond # 160814. The complaint is that the handicapped ramp located on the B-1000 range is damaged. The ramp is damaged and is scheduled to be repaired this week." Dkt. [48]-9, p. 1.

G. Eaton, Physical Plant Director, also responded to Mr. Strominger's grievance. In relevant part, G. Eaton stated that beginning on October 20, 2014, the Maintenance Department began constructing a concrete ramp, and that construction would take about a week. *Id*. Mr. Strominger had no further issues with the ramp after it was repaired with concrete in October 2014. Dkt. [85]-1, p. 18, lines 7-13.

Mr. Strominger does not recall if there were instances where he simply turned down the opportunity to go to outdoor recreation. Dkt. [85]-1, p. 40, lines 1-17.

**B.     Analysis**

    **1.     ADA and Rehab Act**

Relief available under the ADA and Rehab Act for failure to accommodate physical impairments "is coextensive." *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). "[T]he analysis governing each statute is the same except that the Rehabilitation Act includes an as additional element the receipt of federal funds, which all states accept for their prisons." *Id.* at 671. The Seventh Circuit has found it acceptable "[a]s a practical matter, to "dispense with the ADA and the thorny question of sovereign immunity" because a plaintiff can have only one recovery. *Id.* at 672. Therefore, the Court will address only the Rehab Act claim.

"The Rehab Act prohibits a federal grant recipient from discriminating against a 'qualified

7

individual with a disability' solely by reason of his or her disability." *Peters v. City of Mauston,* 311 F.3d 835, 841 (7th Cir. 2002). To state a claim under the Rehab Act, a plaintiff must show that (1) he is a qualified person (2) with a disability, and (3) the defendant denied him access to a program or activity because of his disability. *Jaros,* 684 F.3d at 672 (citations omitted). A plaintiff cannot recover compensatory damages under either the ADA or the Rehab Act "without showing intentional discrimination." *Strominger v. Brock*, 592 Fed. Appx. 508, 511 (7th Cir. 2014) (citing 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a(a)(2) (Rehab Act)).

Although the Seventh Circuit has not decided "whether discriminatory animus or deliberate indifference is required to show intentional discrimination … [m]ere negligence is insufficient under either standard, though." *Id.* at 512; *see also CTL ex rel. Trebatoski v. Ashland School Dist.*, 743 F.3d 524, 528 n. 4 (7th Cir. 2014) (noting the split among the circuits over the appropriate standard for showing intentional discrimination but not needing to decide in this case). The circuits that have rejected discriminatory animus and held that deliberate indifference is the proper standard to determine intentional discrimination "have generally applied a two-part standard for deliberate indifference, requiring both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *S.H. ex rel. Durrell v. Lower Merion School Dist.,* 729 F.3d 248, 263 (3d Cir. 2013) (internal quotations omitted). Deliberate indifference in this context "must be a deliberate choice, rather than negligence or bureaucratic inaction." *Id.* (internal quotation omitted).

The parties do not dispute that Mr. Strominger is a qualified person who has a disability. The only elements of the Rehab Act claim that are at issue are whether the IDOC denied Mr. Strominger access to a program or activity, which is outdoor recreation, and whether the IDOC intentionally discriminated against him.

8

### a. Denial of Outdoor Recreation

With regard to the reason Mr. Strominger did not go to outside recreation at certain times, the IDOC argues that Mr. Strominger should not be able to rely on his deposition testimony because it conflicts with the allegations made in his Amended Complaint and in his grievances. In his Amended Complaint and in his grievances, Mr. Strominger alleged that he could not use the ramp because of his fear that he would get hurt. Mr. Strominger later testified that Lt. Nicholson ordered staff members not to allow him to use the ramp until it was repaired. Lt. Nicholson denies issuing any such order. Mr. Strominger's testimony is not based on personal knowledge with respect to any order issued by Lt. Nicholson. Rather, it is based, at most, on what he assumed or on what other officers may have said. His testimony that officers would not take him down the ramp, however, is based on personal experience. The Court need not discuss further the Defendants' opposition to Mr. Strominger's change in allegations because even allowing Mr. Strominger's deposition testimony full consideration he has not presented evidence sufficient to create a genuine issue of fact on *all* elements of his claims.

Furthermore, whether or not any order was issued barring Mr. Strominger access to outdoor recreation, other circumstances do create a genuine issue of material fact on the issue of his access to outdoor recreation. The Defendants admit that a scenario could arise where the ramp deteriorated to such a condition as to prevent Mr. Strominger from using it, thereby constructively excluding him from the recreation yard. Defs' Brief, dkt. [49], p. 11. Mr. Strominger never stated that he was denied *all* access to outdoor recreation from December 2013 through October 2014. When asked how often the condition of the ramp stopped him from using outdoor recreation, he responded that he could not recall, but it was "most of the time." Dkt. [85]-1, p. 38, lines 11-25; p. 39, lines 1-3. The question remains whether he was denied access to outdoor recreation.

9

The Defendants argue that the photographic evidence demonstrates that there is no genuine issue of fact regarding the condition of the ramp before it was repaired and that it shows that it was usable. The photograph was taken in early May 2014 shortly before the ramp was repaired. Although the Defendants describe the photograph as showing "a hole off-center, to the right side of the ramp," and that the hole is outside the wheelbase of any wheelchair, dkt. [49], p. 12, the photograph can also be viewed as showing more damage than a single hole on the right side of the ramp. *See* Dkt. [48]-3 (photograph of the damaged ramp). As pointed out by Mr. Strominger, when the repair was done, it extended to the middle of the ramp. Dkt. [48]-4 (photograph of repaired ramp). Mr. Strominger testified in his declaration that on April 27, 2014, the officer pushing him decided not to risk pushing the wheelchair into the hole. Dkt. [68], ¶ 21.

There is no photograph of the condition of the ramp prior to May 2014. The May 2014 photograph of record presumably shows the ramp in a more damaged condition than it was when Mr. Strominger first complained in December 2013, but there is no evidence of how and when the damage progressed from December 2013. The Court finds that reasonable jurors could disagree as to how damaged the ramp was before it was repaired in May 2014 and whether it effectively precluded Mr. Strominger from using it.

For purposes of the Motion for Summary Judgment, the Court finds that a reasonable jury could find that Mr. Strominger was effectively denied use of outside recreation for a period of time sometime after December 2013 and before the time it was first repaired in May 2014.[1]

There is a genuine issue of material fact whether Mr. Strominger was denied access to outdoor recreation at some but not all times from December 2013 until the ramp was replaced by

---

[1] The wooden repair held up for a period of time. When the repaired ramp was investigated in mid-June 2014, it was determined to be in usable condition. Mr. Strominger's September 22, 2014, grievance alleged a huge hole had developed. The precise time that Mr. Strominger again became unable to access outdoor recreation before the concrete ramp was installed in October 2014 is not established on this record.

a concrete one in October 2014. This ruling on the issue of deprivation of outdoor recreation need not be more specific time-wise because Mr. Strominger's Rehab Act claim fails with regard to the second element at issue.

### b. **Intentional Discrimination**

The next question is whether the IDOC intentionally discriminated against Mr. Strominger because of his disability. *See Morris v. Kingston,* 368 Fed.Appx. 686, 689 (7th Cir. 2010) (compensatory damages are available in ADA and Rehab Act cases only "if a public official *intentionally* discriminates because of disability.") (emphasis in original). As noted above, intentional discrimination, shown by deliberate indifference, requires a showing that the defendant knew that a harm to a federally protected right was substantially likely and failed to act upon that likelihood. Even a showing of negligence is not sufficient to prove deliberate indifference.

Mr. Strominger argues that Lt. Nicholson intentionally discriminated against him, as evidenced by the failure, despite repeated requests, to properly repair the ramp. By "properly," Mr. Strominger means "with concrete."

The wooden ramp was in varying conditions between December 2013 and October 2014. Based on the record, it is presumed that the wooden ramp's condition deteriorated over time before and after it was first repaired in May 2014, given the fact that it was exposed to elements such as rain. The Court has considered Lt. Nicholson's knowledge of the situation and reviewed the steps he took in response to the damaged ramp in order to determine whether a reasonable jury could decide that he intentionally discriminated against Mr. Strominger.

In January of 2014, in response to a written complaint from Mr. Strominger, Lt. Nicholson inspected the ramp. At that time, he determined that a minor hole had developed off to one side of the ramp. Based on the location of the hole, it is undisputed that he believed that an individual

11

in a wheelchair could avoid the hole and still use the ramp. Lt. Nicholson described the ramp as a "hazard," but he still believed that inmates in wheelchairs could access outdoor recreation because they would be assisted by staff members.

The record is undisputed that Lt. Nicholson was not aware that officers were sometimes deciding not to take Mr. Strominger down the ramp. Indeed, Mr. Strominger's grievances alleged that he was unable to use the ramp because of his fear of getting hurt. He never reported that prison staff were sometimes preventing him from maneuvering down the ramp.

Materials for the first repairs were ordered in February 2014. Although the first repair was not completed until May 2014, there is no evidence that Lt. Nicholson caused or created the delay. And again, prior to May 2014, Lt. Nicholson believed Mr. Strominger was able to be use the ramp with assistance. Mr. Strominger filed his first formal grievance about the ramp on April 29, 2014, after he and an assisting officer had attempted to use the ramp. Lt. Nicholson investigated the complaint and it was heeded. The ramp was repaired with wood shortly thereafter in early May 2014.

Sometime later, the ramp became damaged again. No evidence shows the extent of that damage and when it occurred. As of June 11, 2014, a month after the repair, when Lt. Nicholson inspected the ramp again, he determined that the repairs had held up and the ramp was in usable condition. Maintenance Department staff also determined that the ramp was safe to use. The intention remained, however, that when resources allowed, the wooden ramp would be replaced with a concrete one.

Mr. Strominger's third grievance, filed on or about September 22, 2014, alleged that the ramp had a "huge hole" and that it had not been repaired properly the last time. Lt. Nicholson responded on October 14, 2014, stating that the "ramp is damaged and is scheduled to be repaired

12

this week." Dkt. [48]-9, p. 1. The concrete ramp was constructed in October 2014.

The evidence is undisputed that Lt. Nicholson believed that Mr. Strominger would always have assistance from an officer pushing his wheelchair and thereby could avoid the damaged area of the ramp. Contrary to Mr. Strominger's argument, Lt. Nicholson's decision that the ramp needed to be repaired does not conflict with his subjective belief that in the meantime the ramp could be used in a way that could avoid wheelchair contact with the hole. There is no evidence that Lt. Nicholson ever refused to investigate Mr. Strominger's complaints or refused to order repairs at any time.

Although the repair was first done using wood, a "reasonable" accommodation under the Rehab Act means just that, reasonable, not perfect. *See e.g., Stewart v. County of Brown,* 86 F.3d 107, 112 (7th Cir. 1996) (reasonable accommodation under the ADA and Rehab Act means *reasonable,* not "a perfect cure for the problem") (emphasis in original); *Boston v. Dart,* No. 16-cv-8680, 2016 WL 5373083, *7 (N.D.Ill. Sept. 26, 2016) (plaintiff's preferred accommodation is not required as long as the accommodation provided is reasonable). There is no evidence showing that using concrete to replace the ramp was the only reasonable accommodation for allowing access to the outdoor recreation area. The wooden repair was intended to be temporary until resources allowed the concrete ramp to be constructed. The wooden repairs did, in fact, fix the ramp for a period of time.

Based on this record, no reasonable jury could find that Lt. Nicholson intentionally discriminated against Mr. Strominger on the basis of disability. Therefore, the IDOC is entitled to summary judgment on the ADA and Rehab Act claims.

## 2. Eighth Amendment Claim

At all times relevant to Mr. Strominger's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

A deliberate indifference Eighth Amendment claim "is comprised of both an objective and a subjective element." *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). First, the plaintiff must demonstrate that the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation omitted). Life's minimal necessities include "reasonable safety from themselves and others." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199 (1989) (internal quotation omitted).

If the conditions at issue were sufficiently serious, then the Court determines whether the defendant acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). Deliberate indifference means that "the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id*. "As such, it is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Id.*

Here, the same analysis that defeats Mr. Strominger's Rehab Act claim defeats his Eighth Amendment claim. Even if the Court assumes for purposes of this motion that there was a substantial risk of harm to Mr. Strominger, there is no evidence that Lt. Nicholson was aware of a

substantial potential harm yet refused to act to prevent it. Lt. Nicholson inspected the ramp each time Mr. Strominger complained, reasonably determined that it needed to be repaired but could still be used with staff assistance, and took steps to have the repairs ordered and completed. No reasonable jury could find that Lt. Nicholson was deliberately indifferent to Mr. Strominger's safety in violation of the Eighth Amendment.

### 3. **Fourteenth Amendment Claim**

Mr. Strominger's Fourteenth Amendment claim arises out of the Equal Protection Clause. "[T]he Equal Protection clause affords only rational basis review for disability discrimination." *Nanda v. Board of Trustees,* 303 F.3d 817, 826 (7th Cir. 2002). This means that "State policies that involve classifications based on disability are constitutional if there is a rational relationship between the disparity in treatment and some legitimate government purpose." *Cherry v. University of Wisconsin Sys. Bd. of Regents,* 265 F.3d 541, 552 (7th Cir. 2001). "[T]he Fourteenth Amendment allows the State to single out the disabled for different treatment so long as it has a rational or legitimate purpose." *Stevens v. Illinois Dept. of Transp.* 210 F.3d 732, 738 (7th Cir. 2000). The presumption is that "distinctions made by the State that are based on disability are rational and legitimate." *Id.* "[T]he ADA's prohibition of disability discrimination far exceeds what is required under the Fourteenth Amendment." *Cherry,* 265 F.3d at 552. The burden rests on the plaintiff to "demonstrate that the government's claimed purpose is illegitimate or that the means used to achieve that purpose are irrational." *Stevens,* 210 F.3d at 738.

The Equal Protection Clause "protects against intentional and arbitrary discrimination." *Whitaker v. Kenosha Unified School Dist. No. 1*, 858 F.3d 1034, 1050 (7th Cir. 2017). The differential treatment at issue in this case is access to outdoor recreation. Consistent with the discussion throughout this Entry, no reasonable jury could conclude that Lt. Nicholson's conduct

in having the ramp repaired was irrational or that he intentionally discriminated against Mr. Strominger. Lt. Nicholson is entitled to summary judgment on Mr. Strominger's Fourteenth Amendment claim.

## IV. CONCLUSION

The Mr. Strominger's Motion to Strike the Defendants' supplemental reply, dkt. [92], is **GRANTED,** to the extent that the Court has not relied on the Defendants' filing of August 23, 2017, in reaching its decision in this case.

For the reasons explained above, the Defendants' Motion for Summary Judgment, dkt. [48], is **GRANTED.** Judgment consistent with this Entry and with the Entry of January 27, 2016, dkt. [11], shall now issue.

**SO ORDERED.**

Date: __9/25/2017__

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Raymond Strominger, 160814
Pendleton Correctional Facility
4490 West Reformatory Road
Pendleton, Indiana 46064

David A. Arthur
OFFICE OF THE INDIANA ATTORNEY GENERAL
david.arthur@atg.in.gov

Jill Esenwein
OFFICE OF THE INDIANA ATTORNEY GENERAL
jill.esenwein@atg.in.gov

Jonathan Paul Nagy
OFFICE OF THE INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov